# United States Court of Appeals
## For the First Circuit

---

Nos. 15-2456 & 15-2462

UNITED STATES OF AMERICA,

Appellee,

v.

DIEGO FERNÁNDEZ-SANTOS,

Defendant, Appellant.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

---

Before

Howard, Chief Judge,
Dyk* and Thompson, Circuit Judges.

---

Jose R. Gaztambide-Aneses for appellant.

Mainon Schwartz, Assistant United States Attorney, with whom
Rosa Emilia Rodríguez-Vélez, United States Attorney, Mariana E.
Bauzá Almonte, Assistant United States Attorney, Chief, Appellate
Division, and Thomas F. Klumper, Assistant United States Attorney,
Senior Appellate Counsel, were on brief, for appellee.

---

May 1, 2017

---

---

* Of the Federal Circuit, sitting by designation.

THOMPSON, **Circuit Judge**.    Defendant-appellant Diego Fernández-Santos ("Fernández") pled guilty to three charges stemming from his possession of guns and drugs while on supervised release.  He later moved to change his plea to not guilty, but the district court denied the motion and sentenced him to seventy-six months' imprisonment on those three charges plus twenty-four months, to be served consecutively, for violating the terms of his supervised release.  He now appeals the court's denial of his motion to change his plea and the procedural reasonableness of his 100-month sentence.  Finding no error on either score, we affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Back in 2011, Fernández was convicted of possessing cocaine with intent to distribute.  He was sentenced to time served and placed on supervised release.  Fernández failed to comply with the terms of that supervised release, so law enforcement officers obtained a warrant for his arrest.  Early in the morning of February 13, 2014, the officers approached his home to make the arrest, knocked on the door, and identified themselves.  They got no response but heard movement inside, so they attempted to enter by force.  But this took a little time, and as they were trying to

---

[1] Fernández appeals after two days of trial and a guilty plea, so we take the facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report, and transcripts of the trial and sentencing hearing.  See United States v. Díaz-Bermúdez, 778 F.3d 309, 310 (1st Cir. 2015).

get through the front door, someone ran out the back door carrying a red bag.   Officers gave chase.   The runner turned out to be Fernández's twelve-year-old nephew, and the red bag contained drug paraphernalia, cocaine residue, zip-top bags with a fruit insignia (commonly used by drug dealers to brand their product), 9mm ammunition, and two firearm magazines.

Meanwhile, other officers got in the house and quickly apprehended a wet-handed Fernández, who was darting out of the bathroom and also trying to flee out the back door.   Officers searched the house and found more drug paraphernalia, including cutting agents (used to increase the quantity of saleable drugs), torn "eight-ball" wrappings on top of the washing machine next to the bathroom (later found to contain trace amounts of cocaine), digital scales, and more fruit-branded zip-top bags.   When asked if there was anything in the house that might harm an officer, Fernández said there was a gun hidden behind the washing machine, so the officers immediately recovered it.

On March 27, 2014, a grand jury indicted Fernández on three charges:   (1) possession with intent to distribute a detectable amount of cocaine, in violation of 21 U.S.C. § 841 ("Count One"); (2) possession of a firearm in furtherance of the drug-trafficking crimes charged in Count One, in violation of 18 U.S.C. § 924(c)(1)(A) ("Count Two"); and (3) being a convicted

felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) ("Count Three").

Fernández's trial began on June 9, 2014. A jury got selected, the government and Fernández's counsel made their opening statements, the court gave preliminary jury instructions about the three charges and their elements, and the government presented some of its evidence. The next day Fernández put a halt to the trial and changed his plea to guilty to all three charges.

At his change-of-plea colloquy, Fernández stated that he had received a copy of the indictment and had discussed it with his counsel. Fernández further stated that he was satisfied with his counsel's representation, understood the charges against him, committed the crimes charged, and was pleading guilty knowingly, voluntarily, and intelligently. The government recounted some of the evidence against Fernández, who agreed with the government's version of the facts. The district court accepted his guilty plea and set a date for sentencing.

Shortly after pleading guilty, Fernández was transferred from Puerto Rico to a prison in Georgia. Fernández claims he lost touch with his lawyer after the transfer. On September 10, 2014, three months after Fernández pled guilty to the charges, his attorney filed a motion to withdraw from the case. The district court opted to grant the motion in part--it appointed a new attorney to work with the original one. Then, on November 3, 2014,

Fernández's original attorney sought the same relief and made a second motion to withdraw.  This time, the district court granted it in full.  That left Fernández's new attorney as his sole defense counsel.

The ins and outs of the rest of the proceedings are important to understanding Fernández's legal arguments on appeal, so we outline them now and save the details for later.  First, working with his new attorney, on January 11, 2015, seven months after he pled guilty, Fernández moved to withdraw his guilty plea. After hearing from both sides, the court denied this motion, concluding that:  Fernández pled guilty voluntarily, knowingly, and intelligently; Fernández's claim of actual innocence was meager; and Fernández's motion was not timely.  Following this denial, on November 4, 2015, the district court sentenced Fernández to sixteen months to be served concurrently on Counts One and Three, and sixty months to be served consecutively for Count Two--a total of seventy-six months for the three charges.  But that was not all.  Remember that officers caught Fernández when they came to arrest him for violating the conditions of his supervised release imposed for his 2011 conviction.  One of those conditions: "the defendant shall not commit another . . . crime."  So, after Fernández pled guilty to the other crimes, the court found Fernández had violated the conditions of his supervised release. For the violation, the court sentenced Fernández to an additional

twenty-four months, to be served consecutively to his seventy-six month sentence, bringing Fernández's total sentence to 100 months.

Fernández appeals, challenging the district court's denial of his motion to withdraw his guilty plea and the consecutive nature of his violation sentence.

DISCUSSION

A. <u>Motion to Withdraw the Guilty Plea</u>

Fernández first argues that the district court erred by denying Fernández's motion to withdraw his guilty plea. Of course, the government says the district court did no such thing. That "a defendant has no absolute right to withdraw a guilty plea" is a well-established maxim. <u>United States</u> v. <u>Caramadre</u>, 807 F.3d 359, 366 (1st Cir. 2015), <u>cert. denied</u>, 136 S. Ct. 2455 (2016). A person wishing to do so after the court has accepted a plea but before sentencing bears the burden of showing a "fair and just reason for requesting the withdrawal." <u>Id.</u> (quoting Fed. R. Crim. P. 11(d)(2)(B)). To determine whether a defendant has shown a "fair and just reason," courts consider a number of factors under the totality of the circumstances, including

- "whether the original guilty plea was knowing, intelligent, and voluntary,"

- "the timing of the request," and

- "whether the defendant is now colorably asserting legal innocence."

Id. (citation omitted).  If these factors weigh in favor of allowing the defendant to withdraw his guilty plea, courts also consider any prejudice the government would face as a result.  Id. We review a district court's ruling on a motion to withdraw a guilty plea for an abuse of discretion.  United States v. Merritt, 755 F.3d 6, 9 (1st Cir. 2014).  Assessing each of Fernández's arguments on each factor in turn, we conclude that the district court did not abuse its discretion in denying Fernández's motion to withdraw his plea.

### 1. Knowing, Intelligent, and Voluntary Plea

On to Fernández's first argument, that his guilty plea was not made knowingly, intelligently, and voluntarily.  He gives us two reasons why, claiming:  (1) he did not understand the charges against him, and (2) his original lawyer gave him ineffective assistance.  As we explain, neither argument helps him here.

### i. Understanding of the Charges

Fernández claims he did not understand the charges against him because the court explained the charges in "very general terms" and inadequately explained the mens rea the government would have to prove at trial.[2]  So, his plea was not

---

[2] Fernández contends that abuse-of-discretion review applies to all of his withdrawal-related arguments on appeal.  The government suggests that Fernández may have waived his argument that he did not understand the charges against him.  Because

knowing, intelligent, and voluntary.  The government says the explanation of the charges was adequate.  We agree.

Rule 11 requires the district court to "inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading," Fed. R. Crim. P. 11(b)(1)(G), including "the elements of the charges that the prosecution would have to prove at trial," United States v. Gandia-Maysonet, 227 F.3d 1, 3 (1st Cir. 2000).  However, Rule 11 "does not require the court to explain the technical intricacies of the charges in the indictment."  United States v. Ramos-Mejía, 721 F.3d 12, 15 (1st Cir. 2013) (internal citations and quotation marks omitted).  Ordinarily, "it is sufficient in a plea colloquy for a district court to ascertain that a defendant is aware of the nature of the charge[s] against him by reading the charge[s] in the indictment to the defendant and obtaining his competent acknowledgment that he understands the charge[s]."  Id. (internal citations and quotation marks omitted).

Here, the district court certainly did at least this much.  At the change-of-plea hearing, the district court confirmed that Fernández was competent to plead guilty (a finding he does not challenge on appeal) and wanted to plead guilty to the charges.

---

Fernández's claim is easy enough to dispose of on the merits, we proceed to do so.  See United States v. Kinsella, 622 F.3d 75, 86 (1st Cir. 2010) (taking an analogous approach).

The district court went on to describe the charges against
Fernández, including a statement of the mens rea the government
would have to prove on each charge. Fernández affirmed that he
understood each charge. The district court also confirmed that
Fernández had received the indictment and discussed it and his
decision to plead guilty with his attorney. The government
summarized the proof it would have presented on each charge if the
trial had continued; Fernández said he agreed with the government's
version of what he heard and "that [is] what [he] did." And as
the government points out, Fernández was also present during jury
selection and the first two days of his trial, where he heard the
preliminary jury instructions explaining the charges against him,
including the mens rea the government would have to prove in order
to convict. The charges against Fernández were uncomplicated, and
the court repeatedly, and accurately, explained them before
accepting Fernández's plea. Fernández gives us no credible or
compelling reason to believe he did not understand the charges
against him.

### ii. Ineffective Assistance of Counsel

Alternately, Fernández attempts to convince us that he
did not knowingly, intelligently, and voluntarily plead guilty via
his claim that his lawyer "failed to represent him adequately and
misguided him." Pertinently, he alleges that his lawyer (1)
pressured him into pleading guilty after convincing two defense

witnesses not to testify, (2) may have failed to ask the government to produce test results showing that one of the seized pieces of evidence tested negative for cocaine, and (3) had a conflict of interest (though he gives no details about that alleged conflict). As a result, Fernández claims he was "wrongly induced" by his defense attorney into pleading guilty. The government argues, and so we find, that Fernández's claims cannot be pursued here on appeal.

In the plea-withdrawal context, a defendant arguing that he received ineffective assistance must show that his attorney's performance fell below an objective level of reasonableness and that, but for this deficient performance, there is a reasonable probability he would not have pled guilty. Caramadre, 807 F.3d at 371. If an appellant's claim "is confined to matters found in the record and can be determined without the need for additional fact finding," we may consider it on direct appeal. United States v. Austin, 948 F.2d 783, 785 (1st Cir. 1991). Otherwise, "[f]airness to the parties and judicial economy both warrant that, absent extraordinary circumstances, an appellate court will not consider an ineffective assistance claim where no endeavor was first made to determine the claim at the district level." United States v. Isom, 85 F.3d 831, 837 (1st Cir. 1996) (quoting Austin, 948 F.2d at 785).

The district court did not "determine the claim" below, id., suggesting instead that the claim should be addressed in a collateral proceeding under 28 U.S.C. § 2255.[3] And here on appeal, Fernández makes only skeletal arguments and does not point to evidence in the record that would allow us to fairly consider his claim. Indeed, the only evidence he cites to support his allegations of witness-pressuring is a paragraph from his affidavit cursorily explaining that his original attorney "pressured [him to plead guilty] by forcing [his] mother and the owner of the weapon to desist from testifying." Such brevity does not help him much.[4]

---

[3] Specifically, the district court found that "assistance of counsel" does not factor into the plea-withdrawal analysis in this circuit, so his ineffective-assistance-of-counsel claims "would be more appropriately addressed pursuant to 28 U.S.C. § 2255." United States v. Fernandez-Santos, 136 F. Supp. 3d 160, 163 n.1 (D.P.R. 2015). To the contrary, this court has found that ineffective assistance of counsel may be a "fair and just reason" to withdraw a guilty plea, see Isom, 85 F.3d at 834, 837, or may render a plea unknowing or involuntary, see Austin, 948 F.2d at 786. But Fernández does not challenge this finding, so we do not address it any further.

[4] Because Fernández claims his original attorney kept (presumably exculpatory) witnesses from testifying at trial, we take this to mean he thought his lawyer's trial performance was "so deficient that it compel[led] [him] to plead under duress." Caramadre, 807 F.3d at 371. But from Fernández's bare-bones statement, we can't assess whether or not that is true because we don't know what the allegedly-pressured witnesses would have said on the stand, or how his lawyer's alleged meddling influenced his decision to plead guilty. (As we explain later, testimony that Fernández did not own the gun would not help him one whit.) Nor does the statement give us any basis to assess the usual touchstone in post-plea ineffective-assistance inquiries: his lawyer's

Moreover, as far as we can tell, Fernández did not raise either of his other allegations to the district court. Nor does he point to anything in the record to show whether his original attorney requested the lab results, or that his attorney had a conflict of interest.[5] That means we cannot assess those claims now, either. Therefore, we dismiss Fernández's ineffective-assistance-of-counsel claim without prejudice to his right to pursue it later under 28 U.S.C. § 2255. See United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993).

2. Timing

Seven months elapsed between Fernández's guilty plea and his motion to withdraw it. Fernández claims the delay was not his fault--he lost contact with his first lawyer when he was moved from a prison in Puerto Rico to one in Georgia--so the district court abused its discretion by holding this delay against him in the plea-withdrawal calculus. The government points out that the

_____

"overall performance in counseling [him] about whether to plead guilty." Id.

[5] Fernández also states that the district court improperly considered his motion to withdraw his plea because the court "disregarded and failed to investigate" his "colorable" conflict-of-interest claim. But, he does not show us where he raised the issue below, and we do not see how the court could have "disregarded" something never brought to its attention. This claim is a nonstarter. See Isom, 85 F.3d at 838 ("[T]he failure to ask the district court to convene an evidentiary hearing ordinarily spells defeat for a contention that one should have been held." (quoting United States v. Tardiff, 969 F.2d 1283, 1286 (1st Cir. 1992))).

transfer to Georgia only accounts for part of the delay, so Fernández's motion to withdraw his guilty plea was still untimely. We think the government has the better argument.

The timing of a motion to withdraw a guilty plea is important, as we have said before, because it is "highly probative of motive." United States v. Doyle, 981 F.2d 591, 595 (1st Cir. 1992). "While an immediate change of heart may well lend considerable force to a plea withdrawal request, a long interval between the plea and the request often weakens any claim that the plea was entered in confusion or under false pretenses." Id. We have previously found a delay of only thirteen days weakened a defendant's motion to withdraw a guilty plea. United States v. Ramos, 810 F.2d 308, 313 (1st Cir. 1987).

In considering Fernández's motion to withdraw, the district court considered Fernández's argument that he lost touch with his lawyer, but concluded this factor weighed against him nonetheless: after he was appointed substitute counsel, Fernández still waited over two months to file his motion to withdraw. On appeal, Fernández gives no explanation for the additional delay. The district court's conclusion on this factor was not an abuse of discretion. See Isom, 85 F.3d at 839 (two-month delay made withdraw untimely).

3. Legal Innocence

Finally, Fernández says he is legally innocent of the charges and puts forward a couple of arguments to support his claim. First, because police found only trace amounts of cocaine in his home (.025 grams), Fernández contends that this small quantity is insufficient to show he possessed cocaine with an intent to distribute.[6]  Second, because he is innocent of the distribution charge, it follows that he is innocent of possessing a gun in furtherance of that distribution charge--and to boot, he didn't even own the gun.[7]

---

[6] Fernández also points out that one of the pieces of evidence seized from his home tested negative for cocaine.  However, when this point was raised before the district court, the government explained that the item at issue contained a cutting agent (so it was no surprise that it tested negative) and other items seized tested positive for the presence of cocaine.  Fernández does not respond to this point or otherwise explain why the absence of cocaine from one piece of evidence shows that he is legally innocent, so we do not address this point any further.

[7] As you may recall from our analysis of his ineffective-assistance-of-counsel argument, Fernández claimed that if not for his original lawyer's meddling, the registered owner of the gun would have testified for Fernández.  He does not, however, identify the owner or give us any hints about what the owner would have said (other than that he or she owned the gun in question).  The district court dealt with Fernández's ownership argument at trial.  When Fernández attempted to cross-examine a government witness about the owner of the gun, the court found that only "actual possession or constructive possession" were relevant because the charge "has nothing to do with ownership."  Fernández has barely pursued the issue since, so it may be waived:  he mentioned the allegedly exonerating (yet anonymous) witness in passing in his motion to withdraw his plea, but not at the motion hearing or in his court-ordered supplemental brief on his innocence claim.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues

- 14 -

A serious claim of innocence supports the conclusion that it would be fair and just to allow a defendant to withdraw a guilty plea. A "mere protestation of legal innocence cannot in and of itself be issue-determinative, for '[t]here are few if any criminal cases where the defendant cannot devise some theory or story which, if believed by a jury, would result in his acquittal.'" United States v. Kobrosky, 711 F.2d 449, 455 (1st Cir. 1983) (citation omitted). "Merely voicing a claim of innocence has no weight in the plea-withdrawal calculus; to be given weight, the claim must be credible." United States v. Gates, 709 F.3d 58, 69 (1st Cir. 2013). A defendant must put forward "factual contentions" that create a "'legally cognizable defense' to the charges, [otherwise] 'he has not effectively denied his culpability,'" and the district court may deny the motion to withdraw. Ramos, 810 F.2d at 312 (citation omitted). The government argues the district court was right to find that Fernández's innocence claims do not amount to a legally cognizable defense to the charges, so they did not amount to a fair and just reason to withdraw his guilty plea, either. We think so, too.

---

adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). But, the government does not press the point, so once again we proceed to dispose of the issue on the merits.

i. Possession with Intent to Distribute

First, contrary to Fernández's protestations, the fact that only trace amounts of cocaine were found at Fernández's residence does not show that he is legally innocent of the possession-with-intent-to-distribute charge.   We have explained that the amount of drugs is only one factor relevant to determining whether a defendant had an intent to distribute.  United States v. Cortés-Cabán, 691 F.3d 1, 35-36 (1st Cir. 2012).   Other relevant factors include "the purity of the drugs at issue, [] the quantity of cash on a defendant, [] the manner in which the drugs were packaged, [] the presence of drug paraphernalia, [] the lack of any evidence showing a defendant used or consumed the type of drug seized, [and] the presence of firearms."  Id. at 36.   Here, the district court found that Fernández had an intent to distribute drugs because of the presence of drug paraphernalia, including eight-ball wrappings, small zip-top bags bearing drug trafficking insignia, cutting agents, and digital scales; and the presence of a gun and ammunition.   The district court also noted that a jury could infer from the fact that Fernández was caught "wet-handed" next to the torn eight-ball wrappers that he flushed a greater quantity of drugs before the police managed to get in the house.

Fernández's arguments on appeal focus exclusively on the amount of drugs found in his home, but he has no rejoinder to the district court's overall assessment of the distribution charge.

Not only was Fernández's claim of innocence "not credible," but it also "contradicted the change-of-plea colloquy in which he acknowledged that he committed the charged offenses." <u>Gates</u>, 709 F.3d at 69. The court did not abuse its discretion in rejecting Fernández's quantity-based defense.

          ii. The Gun Possession Charge

          That leaves Fernández's second innocence argument: he is legally innocent of possessing a firearm in furtherance of a drug trafficking crime, he says, because he did not own the gun. But ownership is not an element of the charge of possessing a gun in furtherance of a drug trafficking crime. 18 U.S.C. § 924(c)(1); <u>United States</u> v. <u>Negrón-Narváez</u>, 403 F.3d 33, 40 (1st Cir. 2005); <u>see</u> <u>United States</u> v. <u>Robinson</u>, 473 F.3d 387, 399 (1st Cir. 2007) (possession requires that defendant "knowingly have the ability and intent to exercise dominion and control of the firearm or area where it is located"). So, this argument doesn't create a legally cognizable defense, either.

          4. Conclusion

          In the end, none of the relevant plea-withdrawal factors weigh in Fernández's favor. The Rule 11 colloquy provides strong evidence that Fernández pled guilty knowingly, intelligently, and voluntarily. <u>United States</u> v. <u>Chambers</u>, 710 F.3d 23, 29 (1st Cir. 2013). Fernández's gripes about the explanation of the charges against him and his allegedly-ineffective counsel give us no reason

to think otherwise.  He moved to withdraw his plea two months after
getting a new lawyer (and seven months after pleading guilty), so
his timing weighs against him, too.  Finally, his drug-quantity
and gun-ownership arguments do not amount to a colorable claim of
innocence, so these arguments do nothing to tilt the scales.
Because none of these factors weigh in favor of granting
Fernández's motion to withdraw his guilty plea, we do not have to
address any prejudice the government might face if the motion were
granted.  See Caramadre, 807 F.3d at 366.  The district court did
not abuse its discretion in finding Fernández presented no fair
and just reason to withdraw his plea, or in denying his motion.

   B. Sentencing

         We turn now to Fernández's second claim on appeal, that
the district court erred by imposing a consecutive sentence for
violating his term of supervised release.  Remember, at the time
Fernández committed the three crimes we discussed above, he was on
supervised release for a previous drug crime.  After he pled
guilty, Fernández, like we said, was sentenced to sixteen months,
to run concurrently, for Counts One and Three (possessing cocaine
with intent to distribute, and being a felon in possession of a
firearm).  He also got five years, to run consecutively to the
sixteen-month term, for Count Two (possessing a firearm in
furtherance of a drug trafficking offense under § 924(c)).  The
total sentence for the three Counts was seventy-six months.  A

half an hour later, he was sentenced a second time for violating the terms of his supervised release.  The district court calculated a Guidelines range of twelve to eighteen months for the revocation sentence.  But, the court gave Fernández the statutory-maximum sentence--two years--to be served consecutively to his seventy-six-month term.  It's the consecutive nature of the revocation sentence he takes issue with here.

Fernández argues that his sentence is procedurally unreasonable and should be vacated.  The district court had the discretion to run the sentences concurrently, he claims, but it erred because it believed it was required to run his twenty-four-month revocation sentence consecutively.  And the court's error was prejudicial because his sentence "became [twenty-four] months longer" as a result of this mistaken belief.  The government argues that the district court did not err because it knew it had the discretion to run the sentences concurrently, it just chose not to.  Even if the district court erred, the government stresses that Fernández cannot show that his sentence was any longer as a result.

Fernández did not raise these arguments below, so we review them for plain error.[8]  Favorably to Fernández, even if we

_____

[8] That means Fernández must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial

assume--without deciding--that the district court committed an error that was clear or obvious in imposing a consecutive revocation sentence, Fernandez cannot succeed.[9] See United States v. Duarte, 246 F.3d 56, 61 (1st Cir. 2001) (bypassing first two

proceedings." United States v. Marchena-Silvestre, 802 F.3d 196, 200 (1st Cir. 2015) (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)).

[9] Fernández's sentencing arguments are murky. We think his point is that the court misunderstood its discretion to run his revocation sentence concurrently with his sentence for "counts one and three of the new indictment." If so, Fernández is wrong. The court's last word on the subject: "the revocation must be consecutive to the 924(c) count. It need not be consecutive to the drug count, but it must be consecutive to the 924(c) count." (The "drug count" is the sixteen-month sentence on Count One, which ran concurrently with Count Three.) The court didn't think the revocation had to run consecutively to Counts One and Three, so it didn't misunderstand its discretion.

But as we said, his arguments are murky. Earlier in his brief he claimed the district court had the discretion to run his revocation concurrently with "the new charges," which include the § 924(c) sentence from Count Two. (Understood this way, his prejudice argument makes more sense: his sentence could only be "[twenty-four] months longer" because of the error if the error was thinking the twenty-four-month revocation had to be consecutive to all three Counts.)

The district court thought the revocation had to be consecutive to Fernández's § 924(c) sentence, but we aren't so sure that's an error. District courts normally have the discretion to run a revocation sentence concurrently. United States v. Carrera-González, 280 F. App'x 11, 13 (1st Cir. 2008). But, 18 U.S.C. § 924(c)(1)(D)(ii) provides that "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person." See also United States v. Gonzales, 520 U.S. 1, 9-11 (1997) (holding that a later-sentencing federal court must run a § 924(c) sentence consecutively to any other undischarged state or federal term). Fernández does not develop this argument at all. So, we don't decide the issue.

prongs of plain-error review under similar circumstances).  That is so because we find that Fernández has not shown that the error--if any--had any impact on his substantial rights.  Resultantly, he cannot pass the plain-error test.

On the third prong of plain-error review, Fernández bears the burden of showing a "reasonable probability that the district court would impose a different" and "more favorable" sentence but for the error.  United States v. Serrano-Beauvaix, 400 F.3d 50, 55 (1st Cir. 2005).  Fernández posits that his overall sentence was twenty-four months longer because the revocation was imposed consecutively.  But "[i]t is not enough for a defendant merely to argue that his sentence might have been different" if not for the error.  United States v. Yeje-Cabrera, 430 F.3d 1, 19 (1st Cir. 2005) (quoting United States v. Sanchez-Berrios, 424 F.3d 65, 80 (1st Cir. 2005)).  He must point to something in the record that indicates the district court might have acted differently if it did not harbor its mistaken belief.

The record gives us no reason to believe that things would have been different for Fernández but for the alleged error.  Indeed, the district court recognized that the Guidelines-recommended revocation sentence for Fernández is twelve to eighteen months.  (And Fernández concedes that the court's calculation was correct.)  Nevertheless, the judge chose to sentence Fernández to the statutory maximum of two years.  See 18

U.S.C. § 3583(e)(3).  The judge's statement of reasons for giving Fernández the statutory-maximum sentence, over his lawyer's request for a sentence at the lowest end of the range, shows he thought the maximum possible punishment was merited by Fernández's crimes and criminal history.  The district court explained that Fernández endangered the minors in his home and proved himself "unable to comply with the law," so a statutory sentence was necessary to reflect "the nature and seriousness of the circumstances of the violation incurred by Mr. Fernández while on supervised release" and to "protect[] the community from [Fernández's] further crimes."  Even if the district court mistakenly believed the sentences had to run consecutively, its decision to impose the maximum sentence and its emphasis on the "seriousness" of the offense do nothing to show that the court would have acted differently but for its mistaken belief.

Fernández has not shown that the district court's error, if any occurred, "affected [his] substantial rights."  Marchena-Silvestre, 802 F.3d at 200.  So, he has not shown plain error.  We affirm his sentence.

CONCLUSION

For all the reasons discussed above, we affirm the district court's ruling and Fernández's sentence, without prejudice to Fernández's right to raise his ineffective-assistance-of-counsel claim in a collateral proceeding.